**SO ORDERED.**

**SIGNED this 20 day of February, 2014.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## GREENVILLE DIVISION

IN RE:

**DANIELLE DENEE FISH,**                                **CHAPTER 7**
                                                        **CASE NO. 13-05783-8-RDD**
      **DEBTOR**

### ORDER GRANTING MOTION TO DISMISS

Pending before the Court is the Motion to Dismiss Chapter 7 Proceeding Pursuant to 11 U.S.C. § 707(b)(1) filed by the Bankruptcy Administrator on November 27, 2013 (the "Motion to Dismiss") and the Response to Motion to Dismiss Chapter 7 Proceeding filed by Danielle Denee Fish (the "Debtor") on December 2, 2013 (the "Response").  A hearing was held on January 14, 2014 in Greenville, North Carolina, to consider the Motion to Dismiss and the Response.

### BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") on September 13, 2013.  The Bankruptcy Administrator filed a statement of presumed abuse which was timely docketed on October 28, 2013.

The Debtor is a pathologist assistant at Greenville Pathology, PA and has been employed there for approximately one year.  The Debtor is divorced and has no dependents. The parties

stipulate that the Debtor earns approximately $5,538.48 per month in gross wages from her employment. She deducts taxes from her wages in the amount of $1,246.87. The Debtor further receives rental income of $950.00 per month and $75.00 per month in consulting income. The Debtor's net monthly household income is $5,516.61[1]. The parties stipulate that all expenses detailed in Schedule J are reasonable and necessary, with the exception that the Bankruptcy Administrator objects to the payment of charitable deductions and student loans.

The Debtor's schedules indicate that she has four secured claims totaling $312,519.57; priority unsecured debts totaling $0.00; and seven non-priority unsecured claims totaling $50,954.54. The Debtor and the Bankruptcy Administrator submitted Joint Stipulations of Fact (the "Joint Stipulations"). The parties stipulate that the total amount of the Debtor's consumer debt is $331,577.73.[2] The parties stipulate, that for the purposes of the January 14, 2014 hearing, the four unsecured claims held by Bill Me Later, GE Capital, USAA Federal Savings Bank in the total amount of $31,896.38, were incurred in the Debtor's name jointly with her former spouse without her knowledge or consent. The parties stipulate that the Debtor did not have knowledge of the

---

[1] Schedule I states the Debtor deducts taxes in the amount of $1,346.87 from her wages and has a net monthly household income of $5,216.61. For purposes of this hearing, the Court will use the amounts stipulated to by the parties.

[2] Specifically, the Joint Stipulations provide:
7. The parties stipulate the debt owed to USAA in the amount of $141,283.49 is secured by her residence at 3416 Planters Way Dr., Farmville, NC and is a consumer debt.
8. The parties stipulate that the debt owed to Northern Ohio Investment Company in the amount of $113,935.60 is secured by the Debtor's former residence located at 4095 Shelton Dr., Lambertville, MI and is a consumer debt.
9. The parties stipulate that the debt owed to Champion Credit Union in the amount of $29,269.40 is secured by a 2011 Ford Edge and is a consumer debt.
10. The parties stipulate that the debt owed to Champion Credit Union in the amount of $28,031.08 is secured by a 2011 Ford F-150 and is a consumer debt. The Statement of Intention filed with the petition indicates that the Debtor intends to the 2011 Ford F-150 Truck securing the debt to Champion Credit Union in the amount of $28,031.08.

accounts and did not authorize the accounts to be opened or charged. The parties stipulate that the four unsecured nonpriority claims in the amount of $31,896.38 are non-consumer debts. The parties further stipulate that the Debtor's case would be a presumed abuse if required to complete the requirements of 11 U.S.C. § 707(b)(2)[3].

The Bankruptcy Administrator contends that the Debtor's case should be dismissed pursuant to 11 U.S.C. § 707(b)(1). The Bankruptcy Administrator contends that the Debtor's debts are primarily consumer debts and the Debtor is subject to the scrutiny of § 707(b)(1). According to the Bankruptcy Administrator, the only reason the case was declared a non-consumer case is so the Debtor could get through the screening mechanism of the means test. Further, the Bankruptcy Administrator believes that the Debtor has a projected disposable income that would require a substantial dividend to unsecured creditors in a Chapter 13 proceeding.

The Debtor responds that her debts are not primarily consumer debts and explains that based on the totality of the circumstances, her case should not be dismissed for abuse, because if it was not for her former spouse incurring charges in her name without her knowledge she would not have filed a bankruptcy petition.

## **DISCUSSION**

Section 707(b)(1) provides:

> the court, . . . may dismiss a case filed by an individual debtor under this chapter whose debts are *primarily consumer debts*, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take

---

[3] The parties stipulate that the Debtor's case would be a presumed abuse if the Debtor's income, expenses, and unsecured debt were applied to the formula in 11 U.S.C. § 707(b)(2). Accordingly, the Court need not conduct an analysis under Section 707(b)(2)(A). Therefore, the issue to be decided here is whether the Debtor's debts are primarily consumer debts.

>into consideration whether a debtor has made, or continues to make, charitable contributions . . . to any qualified religious or charitable entity or organization.

11 U.S.C. § 707(b)(1) (emphasis added).

Section 707(b)(1) only applies in a Chapter 7 proceeding where the debts are "primarily" consumer debts. *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988) (noting that "even if the filing of the petition is in fact a substantial abuse of the bankruptcy procedure, a case may not be dismissed under this provision unless this prerequisite is satisfied."). Accordingly, a prerequisite to the application of Section 707(b)(1) is finding that the debtor's debts are primarily consumer debts. *Id.* The Bankruptcy Code does not explain how to determine whether debts are primarily consumer debts. The parties rely on cases, each representing three different approaches used to determine whether debts are primarily consumer debts. Some courts look to the amount of debt and conclude that where the consumer debt exceeds fifty percent (50%) of the total debt, the debts are primarily consumer debts. *Stewart v. U.S. Trustee* (*In re Stewart*), 175 F.3d 796, 808 (10th Cir. 1997). Other courts have held that consumer debts should be evaluated based on the amount of the debt and by the relative number of consumer debt claims. *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988). Some courts have adopted a "totality of the circumstances" approach. *In re Jones*, 2009 WL 102442 (Bankr. E.D.N.C. Jan. 12, 2009).

The Debtor urges the court to adopt a "totality of the circumstances" approach. The Debtor cites to *In re Jones*, 2009 WL 102442 at *1 (Bankr. E.D.N.C. Jan. 12, 2009). There, the debtors owned and operated a furniture business, Clayton Furniture World, Inc. 2009 WL 102442 at *1 (Bankr. E.D.N.C. Jan. 12, 2009). The debtors listed forty-six claims totaling $326,178.58 in their schedules as "money owed by Clayton Furniture World, Inc." *Id.* The debtors listed fifteen claims owed individually and jointly in their schedules in the amount of $478,586.80. *Id.* The male debtor

4

testified that ninety-five percent (95%) of the debtors' credit card debt was incurred to pay store bills and store debt. Further, the debtors used $28,000.00 of equity in their residence to fund their business. *Id.* The court addressed the issue of whether the debts were primarily consumer debts. *Id.* The court adopted the "totality of the circumstances" approach and noted that the Fourth Circuit has applied a totality test in determining good faith in filing petitions under both Chapter 13 and Chapter 7 and that applying it here was consistent with that precedent. *Id.* at *2 (citing *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986); *In re Green*, 934 F.2d 568 (4th Cir. 1991)). The court noted that debtors are not required to identify consumer and non-consumer debt in their schedules, and that without further explanation it could be impossible to determine on the face of the schedules the nature of each claim. *Id.* at 2. Using the totality of the circumstances approach, the court took testimony and determined that based on the facts of this case it was clear that some of the debts listed as "individual debts" including $28,000.00 of the second mortgage, and ninety-five percent (95%) of the credit card debt, were in fact attributable to the business. Therefore, it was clear the debtors' debts were primarily non-consumer debts and the case could not be dismissed under § 707(b)(1).

Here, the Debtor contends that the only reason she filed a bankruptcy petition was because of the debts incurred by her former spouse in her name without her knowledge or consent. Accordingly, the Debtor argues that under the totality of the circumstances approach she would not have filed a bankruptcy petition but for the unauthorized actions of her former spouse. As such, the Debtor contends the debts should be considered as primarily non-consumer.

The parties stipulate that the debts owed to Bill Me Later, GE Capital, and USAA Federal Savings Bank were incurred by the Debtor's former spouse without her knowledge or authorization. The parties have also stipulated as to the amount and the number of consumer debts and non-

consumer debts. Therefore, the Court need not conduct an analysis to determine what debts are consumer and what debts are non-consumer. The sole issue before the Court is whether the debts are primarily consumer debts. The Debtor's debts are by stipulation classified as follows:

> Consumer Debt: $331,577.73 owed to four (4) creditors.
> Non-Consumer Debt: $31,896.38 owed to three (3) creditors.

It is clear that the amount of consumer debt and the number of consumer creditors are larger than the amount of non-consumer debt and number of non-consumer creditors. The consumer debt represents ninety-one percent (91%) of the total debt. In addition, the actual number of individual consumer debts exceeds fifty-seven percent (57%) of the total number of debts. *See In re Booth*, 858 F.2d at 1055. Accordingly, the Court finds that the fifty percent (50%) plus one test as enumerated by the Tenth Circuit in *Stewart v. U.S. Trustee* (*In re Stewart*), 175 F.3d 796, 808 (10th Cir. 1997) and the Fifth Circuit test in *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988), which looks to the amount and the relative number of claims attributable to consumer debt, are both met.

The Debtor contends, however, that based on the totality of the circumstances, the Court should find that she filed primarily because of non-consumer debt. Here, the Court applies the totality of the circumstances approach and finds that the Debtor's debts are primarily consumer debts. As discussed above in *In re Jones*, the amount of consumer debt ($478,586.80) was greater than the amount of non-consumer debt ($326,178.58). However, the amount of non-consumer claims (46) was larger than consumer claims (15). Here, both the amount of consumer debt and the amount of consumer claims exceeds the amount of non-consumer debt and non-consumer claims. At the hearing, the Debtor identified four claims incurred by the Debtor's former spouse totaling $31,896.38. The Debtor represented that her former spouse applied for the credit cards and loans

online without her authorization by using her social security number. The Debtor represented that she did not find out about the unauthorized credit cards and loans until after she and her former spouse separated. She represented that when she discovered the charges were fraudulent she contacted the creditors, but that the creditors would not consider her former spouse's actions as fraudulent, because they were still legally married at the time. The Debtor represented that she has not yet filed a formal complaint with the creditors.[4] The Court finds the Debtor's debts are primarily consumer debts.

Accordingly, the Debtor's petition may be dismissed only if it can be shown that granting the Debtor a Chapter 7 discharge would be an abuse of the provisions of Chapter 7. *In re Lipford*, 397 B.R. 320, 326 (Bankr. M.D.N.C. Apr. 17, 2008). The moving party has the burden of proving abuse pursuant to Section 707. *Id.* (citations omitted)

To determine whether granting relief would be an abuse, a court should presume an abuse if the debtors current monthly income reduced by certain amounts and multiplied by sixty is not less than the lesser of twenty-five percent (25%) of the debtor's nonpriority unsecured claims, or $7,475.00, whichever is greater; or $12,475.00. Section 707(b)(2)(A)(i).

Section 707(b)(2)'s means test sets forth a formula for determining when the presumption of abuse arises. Here, the parties stipulate that the Debtor's case would be a presumed abuse if the Debtor's income, expenses, and unsecured debt were evaluated in the formula set out in 11 U.S.C. § 707(b)(2)(A). Accordingly, the Court finds that the Debtor's case is a presumed abuse.

---

[4] Contesting these claims prior to proceeding to the last resort of filing a Chapter 7 bankruptcy petition would have been a more prudent course of action.

7

## CONCLUSION

Therefore, the Bankruptcy Administrator's Motion to Dismiss is **GRANTED**. However, the Court affords the Debtor the opportunity to consider converting this case to a proceeding under Chapter 13. The Debtor has fourteen (14) days from the entry of this Order to file a Motion to Convert this case to a case under Chapter 13 of the Bankruptcy Code. If the Debtor fails to do so, the case shall be dismissed as an abuse under Section 707(b)(1) of the Bankruptcy Code.

**SO ORDERED**.

END OF DOCUMENT